# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 20, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-0778-WC

BARBARA CRAWFORD                                              APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                                    2005-CA-0138-WC
WORKERS' COMPENSATION NO. 03-98980

UNIVERSITY OF LOUISVILLE;
HON. IRENE STEEN, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD                              APPELLEES

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

The Workers' Compensation Board (Board) affirmed an Administrative Law Judge's (ALJ's) findings regarding the duration of the claimant's temporary total disability (TTD) and the amount of compensable impairment. Noting that the ALJ awarded benefits under KRS 342.730(1)(c)2 but failed to make a specific finding regarding the claimant's physical capacity to return to the work she performed at the time of her injury, the Board reversed to that extent and remanded for further proceedings. The Court of Appeals affirmed.

Appealing, the claimant continues to assert that the ALJ erred by terminating TTD earlier than the evidence required and by relying on an 8% rather than a 15% impairment. She also asserts that the Board erred by failing to direct the ALJ to award benefits under KRS 342.730(1)(c)1 on remand. We affirm because the disputed

findings were reasonable and because KRS 342.285 requires an ALJ to make the omitted finding of fact and to make any additional findings that Fawbush v. Gwinn, 103 S.W.3d 5 (Ky. 2003), and its progeny require.

The claimant testified that she had three years of college as well as specialized training in archiving and photography. She worked as a library assistant, which involved many different types of duties. On September 18, 2001, she developed numbness in her right wrist and pain in her right arm, neck, and shoulder while working on a very large exhibit. She reported her symptoms immediately, sought medical attention, and returned to work with restrictions.

The claimant continued to work until October 1, 2002, when her employer would no longer permit her to work with restrictions but would give her no other job. She stated that she had not looked for another job and could work no more than part time, but she would consider a job within her restrictions. She complained that pain and other symptoms in her right arm, neck, and shoulder prevented her from performing many of her previous activities. The claimant acknowledged that before the injury she received extensive chiropractic "maintenance treatments" for her back from Drs. Schuler and O'Neil. Dr. Schuler had also treated her for neck pain, which had resolved before the injury.

The parties submitted evidence from Drs. Schuler, Scheker, and Holt, all of whom treated the claimant, and from Drs. Moskal and Wood, who evaluated her for the employer. The employer also submitted a vocational report.

Noting that the physicians diagnosed degenerative changes with a possible herniated disc at C4-5, the ALJ determined that the claimant had "a cervical

degenerative problem, rather than specific injuries to her right hand, wrist or elbow." Although noting the extensive history of pre-injury chiropractic treatment, the ALJ pointed to the claimant's history of working without difficulty until September 18, 2001, and determined that the incident at work aggravated her pre-existing condition, causing a herniated cervical disc at C4-5. After comparing the impairments the physicians assigned and the rationale for each, the ALJ relied on the 8% impairment that Dr. Schuler assigned for the cervical condition. Based on the claimant's return to work at the same or greater wage for approximately a year after her injury, the ALJ applied KRS 342.730(1)(c)2 and awarded a double benefit for periods that she earned less. Relying on Dr. Holt, the ALJ awarded TTD until March 6, 2003.

The Board affirmed the findings regarding TTD and impairment but reversed and remanded for further proceedings under KRS 342.730(1)(c). The Board directed the ALJ to make a clear finding regarding the claimant's physical capacity to return to the work she performed at the time of her injury; to analyze the evidence under Fawbush v. Gwinn, supra, and Kentucky River Enterprises, Inc. v. Elkins, 107 S.W.3d 206 (Ky. 2003); and to award benefits accordingly.

The claimant's first argument concerns the duration of TTD benefits. KRS 342.0011(11)(a) lists two requirements for TTD. The injured worker must not have reached MMI and must not have reached a level of improvement that would permit a return to employment. As explained in W. L. Harper Construction Co. v. Baker, 858 S.W.2d 202, 204 (Ky. App. 1993), MMI occurs when medical evidence indicates that the worker's condition has stabilized and will not be improved by further treatment.

The claimant asserts that because MMI is a medical question, a physician's

3

opinion must support the chosen date. She maintains that Dr. Holt's record from March 6, 2003, was an insufficient basis to presume that further medical treatment would not improve her condition, particularly because she underwent a subsequent MRI, went back to Dr. Scheker, and participated in additional physical therapy. Her employer paid voluntary TTD benefits until May 19, 2003, when she underwent a physical capacity evaluation, but Dr. Scheker did not prepare his report indicating that she was at MMI, until June 23, 2003. She concludes that she was entitled to TTD benefits until May 19 or June 23, 2003.

We are not convinced that the evidence required TTD benefits to be awarded after March 6, 2003. Dr. Wood stated that the claimant would have reached MMI from any soft tissue injury by November 1, 2001. Dr. Schuler stated that she was at MMI by August 29, 2002. Dr. Holt's March 6, 2003, treatment notes indicated that the claimant was feeling better. Although he recommended an MRI, he released her to return to work and restricted her only from heavy lifting and overhead work. Moreover, when he saw her again on April 15, 2003, he reviewed the MRI results but recommended no further treatment or further time off work. Although the claimant returned to Dr. Scheker for treatment two days later and although he continued evaluating her condition until June 23, 2003, such evidence did not compel a finding that MMI occurred in May or June, 2003, rather than by March 6, 2003.

The claimant's second argument concerns the extent of her impairment. She asserts that the ALJ "specifically found" on page 13 of the opinion that she sustained a herniated disc at C4-5 "causing radicular symptoms as a result of her September 18, 2001 work injury." On that basis, she maintains that the decision to apply the 8% DRE

4

category II impairment Dr. Schuler assigned was inconsistent with the finding because the AMA guidelines require a category III impairment to be assigned where a herniated disc causes radicular symptoms. Noting that Dr. Schuler stated his opinion regarding the proper DRE category nine months before the MRI revealed a herniated disc with radicular symptoms, she asserts that Cepero v. Fabricated Metals Corporation, 132 S.W.3d 839 (Ky. 2004), prohibited the ALJ from relying on the opinion. She concludes that the ALJ erred by failing to rely on the 15% impairment that Dr. Scheker assigned.

Cepero, supra, prohibits an ALJ from relying on a medical opinion that is based on an incomplete or erroneous history that is "unsupported by any other credible evidence." Id. at 842. This is not such a case.

Contrary to the claimant's assertion, the ALJ did not determine that the work-related herniated disc caused the claimant's radicular symptoms. The ALJ found it significant that Dr. Schuler had treated her extensively for neck and upper extremity complaints before September 18, 2001. Yet, the record contained no pre-injury diagnostic studies to verify whether the herniated cervical disc was a pre-existing condition. The ALJ's reasons for determining that the work-related incident caused the herniation were the fact that the employer stipulated to an event on September 18, 2001; that the claimant "began to complain immediately," and that she sought treatment with Dr. Schuler and asserted that her symptoms were worse.

Having found only that the herniated disc was work-related, the ALJ did not err by relying on the 8% (category II) impairment that Dr. Schuler assigned for the cervical condition and by disregarding the additional impairment he assigned based on upper extremity complaints. The claimant's assertion that the ALJ should have relied on Dr.

5

Scheker, who assigned a category III (15%) impairment, ignores the fact that, when deposed, he attributed any right arm, elbow, and shoulder symptoms to congenital osteoarthritis rather than the work-related herniated disc. Although he thought the condition might have been aggravated by the claimant's work, the ALJ noted that he was unaware of the treatments the claimant had received before the injury for similar neck and shoulder complaints; therefore, he failed to exclude any pre-existing active condition. Likewise, although Dr. Wood placed the claimant in category III, he attributed the entire impairment to radiculopathy that was due to pre-existing cervical spondylosis rather than the herniated disc. He also took issue with Dr. Scheker's basis for assigning impairment under category III rather than category II, and he stated that the additional impairment Dr. Schuler assigned for upper extremity complaints was improper under the DRE method. Faced with such evidence, the ALJ was not required to disregard Dr. Schuler's opinion that the incident of September 18, 2001, caused an 8% impairment due to a cervical condition or to determine that the incident caused a 15% impairment.

The final issue concerns the Board's decision to remand this claim for further proceedings under KRS 342.730(1)(c). As a preliminary matter, we reject the employer's assertion that the decision was interlocutory. The Board's decision was final and appealable because it authorized the ALJ to enter a different award on remand, i.e., to order the employer to pay more benefits than the initial award required. See Whittaker v. Morgan, 52 S.W.3d 567, 569 (Ky. 2001); Davis v. Island Creek Coal Co., 969 S.W.2d 712, 713 (Ky. 1998).

The claimant asserts that although the Board properly reversed the ALJ for

6

failing to determine whether she presently lacked the physical capacity to return to the work she performed at the time of injury, it erred by failing to direct the ALJ to make a favorable finding and to award a triple benefit under KRS 342.730(1)(c)1. We disagree.

Fawbush v. Gwinn, supra, and Kentucky River Enterprises, Inc. v. Elkins, supra stand for the principle that where the evidence would support either a double or triple benefit, the ALJ may decide which is more appropriate under the circumstances. A triple benefit is appropriate if the worker is unlikely to be able to earn a future wage that equals or exceeds the wage at the time of the injury. Adkins v. Pike County Board of Education, 141 S.W.3d 387 (Ky. App. 2004), explained that an ALJ must consider all relevant circumstances and determine whether the injury has permanently decreased the worker's ability to earn an income.

In Fawbush v. Gwinn, supra, the ALJ awarded benefits under KRS 342.730(1)(c)1, and the court affirmed. In this case, the ALJ failed to make a necessary finding. KRS 342.285 clearly specifies that an ALJ is the finder of fact; therefore, the claim must be remanded for a finding under KRS 342.730(1)(c)1 and if the finding favors the claimant, for analysis under Fawbush and its progeny.

The decision of the Court of Appeals is affirmed.

Lambert, C.J., and Cunningham, Noble, Schroder, and Scott, JJ., concur. Special Justices, Charles A. Cassis and John W. Bland, Jr., concur. Abramson and Minton, JJ., not sitting.

COUNSEL FOR APPELLANT,
BARBARA CRAWFORD:

DAVID L. SAGE II
HUMMELL, COAN, MILLER, & SAGE
239 SOUTH FIFTH STREET, 17TH FLOOR
LOUISVILLE, KY 40202


COUNSEL FOR APPELLEE,
UNIVERSITY OF LOUISVILLE:

JAMES G. FOGLE
THOMAS L. FERRERI
FERRERI & FOGLE, PLLC
203 SPEED BUILDING
333 GUTHRIE GREEN
LOUISVILLE, KY 40202